UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Grand Jury N-09-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:10CR222 (EBB) |
| | : | |
| v. | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S.C. § 1349 (Conspiracy) |
| | : | 18 U.S.C. §§ 1343 & 2 (Wire Fraud) |
| ROBERT RIVERNIDER, ROBERT | : | 26 U.S.C. § 2701 (Evasion of Payment) |
| PONTE, and LORETTA SENECA | : | 26 U.S.C. § 2701 (Evasion of Assessment) |
| | : | |

INDICTMENT

The Grand Jury charges:

BACKGROUND

The Defendants

1.  At all times relevant to this Indictment, defendant ROBERT RIVERNIDER (hereinafter RIVERNIDER) resided and worked in the West Palm Beach area of Florida. RIVERNIDER had training as a mortgage broker and in the debt consolidation business. Beginning in or about 2005, RIVERNIDER worked for a company ("the Company") that, through Internet-based services and otherwise, provided advice to those seeking to consolidate and repay debts.

2.  During the times relevant to this Indictment, defendant ROBERT PONTE (hereinafter PONTE) first resided and worked in Dobbs Ferry, New York, then in New Fairfield, Connecticut, and then Stonington, Connecticut. In or about 2005, RIVERNIDER met PONTE and recruited him to work in the New England region for the Company. RIVERNIDER and PONTE, in part while still working for the Company, undertook the conspiracies and schemes

identified below in this Indictment.

3. At all times relevant to this Indictment, defendant LORETTA SENECA (hereinafter SENECA), a mortgage broker and the older sister of RIVERNIDER, worked with RIVERNIDER, PONTE and others to gather information and process most of the real estate transactions that form the basis for the conspiracy and scheme to defraud alleged in Counts Nine through Eighteen. During all times relevant to this Indictment, SENECA resided in the West Palm Beach and Boca Raton areas of Florida, and, as part of the conspiracy and scheme to defraud alleged in Counts Nine through Eighteen, purchased one or more properties in Florida and/or Tennessee, signing a loan application and HUD statement that misrepresented, among other things, the true purchase price of the property, her monthly income, the occupancy status of the property, and the earnest money payments.

### Entities/Alter Egos Associated with RIVERNIDER and PONTE

4. In or about June 2006, RIVERNIDER established Cut Above Ventures LLC ("Cut Above Ventures"), a New Mexico limited liability company with its principal place of business in Florida. RIVERNIDER solely owned this company and was its president. Cut Above Ventures held at least three checking accounts at Bank of America, the statements of which were sent to RIVERNIDER at the West Palm Beach residence of his younger sister. RIVERNIDER had sole signing authority for the accounts. PONTE and RIVERNIDER funneled through these accounts most of the investor monies that are the subject of the conspiracies and schemes set forth in this Indictment.

5. Beginning in or about 2005, PONTE started doing business in the name of The Hudson Group. He established a website in this name to market a debt reduction program called

"No More Bills."

6. In or about October 2006, PONTE established Falling Rock LLC ("Falling Rock"), a New Mexico limited liability company with its principal place of business in Connecticut. The company had no employees and no physical office location, and did not file tax returns or pay taxes. In or about October 2006, PONTE opened a non-interest bearing checking account for Falling Rock at Bank of America. PONTE received monthly bank statements for the account at his Connecticut address. PONTE used this account to receive payments from the Company and Cut Above Ventures, and the account was instrumental to PONTE engaging in tax evasion as outlined below in Counts Nineteen and Twenty.

## The Victim Investors and Victim Borrowers

7. As described in greater detail below in Counts One through Eight, RIVERNIDER and PONTE conspired to defraud and engaged in a scheme to defraud investors, hereinafter referred to as "Victim Investors," into giving money to PONTE and RIVERNIDER for purported debt reduction plans.

8. As described in greater detail below in Counts Nine through Eighteen, RIVERNIDER, PONTE, SENECA and others conspired to defraud and engaged in a scheme to defraud a number of individuals into purchasing real estate investment properties based on material misrepresentations, concealed facts, and material omissions. Those individuals, hereinafter referred to as the "Victim Borrowers," included a large number of the Victim Investors.

### The Victim Lenders

9. As described in greater detail below in Counts Nine through Eighteen, RIVERNIDER, PONTE, SENECA and others conspired to defraud and engaged in a scheme to defraud various mortgage lenders, collectively referred to as the "Victim Lenders," into loaning monies to the Victim Borrowers based on a series of materially false and fraudulent representations. Those Victim Lenders included, among others: 1) SunTrust Mortgage Inc. with offices in Richmond, Virginia, among other locations, and 2) Wells Fargo Bank, NA, with offices in Miami and Stuart, Florida, among other locations.

10. At all times relevant to this Indictment, Wells Fargo Bank, NA, was a financial institution with deposits insured by the Federal Deposit Insurance Corporation (FDIC).

### COUNT ONE -- CONSPIRACY
### 18 U.S.C. § 1349

### The Conspiracy to Defraud Victim Investors

11. The allegations contained in Paragraphs 1, 2, 4-7 of this Indictment are realleged and incorporated as though fully set forth herein.

12. Beginning in or about June 2005 and continuing to in or about April 2008, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, defendants RIVERNIDER and PONTE did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and others known and unknown to the Grand Jury to commit offenses against the United States, namely, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing and

attempting to execute the scheme and artifice did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

<u>Purpose of the Conspiracy</u>

13.     The purpose of the conspiracy was for RIVERNIDER and PONTE to enrich themselves by defrauding the Victim Investors of monies based on misrepresentations that the monies would be invested in legitimate, high-return investments.

<u>Manner and Means of the Conspiracy</u>

14.     The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, those set forth in ¶¶ 15-20.

15.     It was part of the conspiracy that beginning in 2005, RIVERNIDER and PONTE used the Internet and other means to market a debt payment program typically called "No More Bills" through The Hudson Group. With the "No More Bills" program, RIVERNIDER and PONTE sought Victim Investors to invest monies with them, monies which typically the Victim Investors would raise through home equity lines of credit or monies borrowed from 401K plans.

16.     It was part of the conspiracy that RIVERNIDER and PONTE materially misrepresented and caused to be misrepresented, among other things:

    a.    That the Victim Investors would receive a substantial investment return, typically a monthly repayment on the invested monies of approximately seven to ten percent of their initial investment.

    b.    That the returns would continue for a period substantially longer than needed to recoup the initial investment and result in a return substantially greater than the initial investment.

  c. That the Victim Investors' existing debts and home equity lines of credit, if taken out to fund the investment, would be repaid in full from investment returns.

  d. That the Victim Investors' monies were being invested offshore in legitimate high- return investments, including investments in foreign currency exchanges, hedge funds, or other high-yield ventures.

17. It was part of the conspiracy that PONTE would often explain that he was working with a business partner, RIVERNIDER, who had specialized knowledge in investments. PONTE frequently explained that he and RIVERNIDER were pooling investor funds to allow them to invest like the large investors in the market.

18. It was part of the conspiracy that, in truth and in fact, as RIVERNIDER and PONTE well knew, the representations made to the Victim Investors were materially false and misleading. RIVERNIDER and PONTE knew that the invested monies could not and would not earn the returns advertised, that the returns would not pay out significantly more than the investment, that the monies invested by the later Victim Investors would not be repaid in full, and that the invested monies were not being invested as represented, including not being invested in foreign currency exchanges and hedge funds. Instead, the monies were used to pay, among other things, the preexisting debts of other investors and the living expenses of the extended family of RIVERNIDER and PONTE.

19. It was part of the conspiracy that PONTE, from his home/office in Connecticut, would routinely talk and correspond by email with the Victim Investors, his assistant in New York and his coconspirator RIVERNIDER in Florida. Upon receipt of information in Connecticut from the Victim Investors, PONTE would forward the relevant applications and other financial information to RIVERNIDER in Florida. RIVERNIDER would review and

approve the purported investment plans, including the advertised returns.

20. It was part of the conspiracy that, if the Victim Investors remained interested in investing in the purported investment plan, RIVERNIDER and PONTE would instruct them or cause for them to be instructed to wire monies for investment to one of the bank accounts held in the name of Cut Above Ventures. RIVERNIDER would then direct the use of the monies either through wiring instructions or by writing checks on the account.

## Overt Acts

21. In furtherance of the conspiracy, and to accomplish its purposes and objects, the defendants RIVERNIDER, PONTE and others known and unknown to the Grand Jury committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

    a. On or about September 13, 2006, RIVERNIDER emailed PONTE with the terms of the investment plan for the Victim Investor Michael M. for an investment amount of $250,000.

    b. On or about May 14, 2007, PONTE emailed RIVERNIDER asking whether RIVERNIDER had a chance to finish the purported investment plan for the Victim Investor Richard B.

    c. Between July and August 2007, PONTE talked by telephone with the Victim Investor Maria M. on multiple occasions convincing her to invest with PONTE and RIVERNIDER.

    d. On or about July 20, 2007, PONTE talked by telephone with the Victim Investor Robben W. about the investment plan.

    e. On or about Labor Day Weekend, 2007, PONTE met with the Victim Investor Joel B. to discuss investing with PONTE and RIVERNIDER.

    f. In or about April 2007, PONTE talked by telephone with the Victim Investor Scott M. about the investment plan.

  g.  On or about September 5, 2007, responding to an email from PONTE regarding the interest of the Victim Investor Louis C. in investing with PONTE and RIVERNIDER, RIVERNIDER emailed instructions to sell the plan to the investor and have Louis C. send in money.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO through EIGHT - Wire Fraud
18 U.S.C. §§ 1343 & 2

The Scheme to Defraud the Victim Investors

22. The allegations contained in Paragraphs 1, 2, 4-7, and 15-20 of this Indictment are realleged and incorporated as though fully set forth herein.

23. From in or about June 2005 through in or about April 2008, in the District of Connecticut and elsewhere, defendants RIVERNIDER and PONTE knowingly, willfully and with intent to defraud devised and intended to devise a scheme and artifice to defraud the Victim Investors and to obtain money and property from these investors by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is in substance set forth in ¶¶ 15-20 above.

24. As a result of the scheme, PONTE and RIVERNIDER exposed the Victim Investors to a risk of loss, and the Victim Investors suffered significant losses.

The Execution of the Scheme and Artifice to Defraud

25. On or about the dates listed below, in the District of Connecticut and elsewhere, having devised and intended to devise a scheme and artifice to defraud the Victim Investors, and for obtaining money and property from the Victim Investors by means of materially false and fraudulent pretenses, representations and promises as set forth in ¶¶ 15-20 above, for the purpose of executing such aforementioned scheme and artifice, RIVERNIDER and PONTE transmitted

and caused to be transmitted by means of a wire and radio communication in interstate commerce, the following writings, signs, signals, pictures and sounds, with each wiring constituting a separate count of this Indictment as enumerated below:

| Count | Wiring Date (on or about) | Origin of Wiring | Destination of Wiring | Description | Victim Investor |
|---|---|---|---|---|---|
| 2 | 11/27/2006 | CT | NJ | Email between PONTE and Victim Investor Michael M. with wiring instructions | Michael M. |
| 3 | 6/1/2007 | CT | CA | Phone call between PONTE and Victim Investor Richard B. | Richard B. |
| 4 | 8/2/07 | NY | CT, FL | Email among PONTE's assistant, PONTE and RIVERNIDER regarding Victim Investor Maria M.'s potential investment | Maria M. |
| 5 | 9/8/07 | CT | CA, NY | Email from PONTE to PONTE's assistant and Victim Investor Robben W. with wiring instructions for potential investment | Robben W. |
| 6 | 9/07/2007 | CT | AZ | Phone call between PONTE and Victim Investor Joel B., following email communications between them | Joel B. |
| 7 | 9/12/2007 | CT | NM | Wire transfer of funds from Victim Investor Scott M. to Cut Above Ventures | Scott M. |
| 8 | 9/14/2007 | CT | NM | Wire transfer of funds from Victim Investor Louis C. to Cut Above Ventures | Louis C. |

All in violation of Title 18, United States Code, Sections 1343 & 2.

## COUNT NINE - CONSPIRACY
## 18 U.S.C. § 1349

26.     The allegations contained in Paragraphs 1-10 of this Indictment are realleged and incorporated as though fully set forth herein.

### The Conspiracy to Defraud the Victim Lenders and Victim Borrowers

27.     Beginning in November 2006 and continuing to in or about December 2007, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, defendants RIVERNIDER, PONTE, and SENECA did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and others, known and unknown to the Grand Jury, to commit offenses against the United States, namely, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property from the Victim Lenders, including affecting a financial institution, and the Victim Borrowers by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing and attempting to execute the scheme and artifice, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

28.     The purpose of the conspiracy was for RIVERNIDER, PONTE, SENECA and others known and unknown to the Grand Jury to enrich themselves by defrauding the Victim Lenders to extend loans to finance the purchase of properties based on misinformation and by defrauding the Victim Borrowers into seeking such lending.

## Manner and Means of the Conspiracy

29. The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, those set forth in ¶¶ 30-35.

30. It was part of the conspiracy that RIVERNIDER, PONTE, and others would and did recruit the Victim Borrowers to take out financing to purchase various investment properties, primarily in Tennessee and Florida, with financing from the Victim Lenders. RIVERNIDER and PONTE typically represented to the Victim Borrowers that these properties would be passive investments and that PONTE and RIVERNIDER would be responsible for the details of the purchase, rental, maintenance and payment of the mortgages on the properties.

31. It was part of the conspiracy that RIVERNIDER, PONTE, and others made material misrepresentations and material omissions and concealed material facts from the Victim Borrowers, including representing that RIVERNIDER and PONTE would arrange for the purchase of the properties by the Victim Borrowers at markedly discounted values. In fact, RIVERNIDER and PONTE frequently marked up the purchase price of the properties to the Victim Borrowers often by as much as twenty-five percent without disclosing the increase in the purchase price.

32. It was also part of the conspiracy that RIVERNIDER, PONTE and others represented that the investment properties would return to the Victim Borrowers sufficient monies to cover the carrying costs as well as reduce the Victim Borrowers' other debt burden, when RIVERNIDER, PONTE, and others knew that the returns would not produce such returns.

33. It was part of the conspiracy that RIVERNIDER, PONTE, and others falsified certain of the Victim Borrowers' material financial information in order to obtain financing from the Victim Lenders to purchase the properties and either did not inform the Victim Borrowers of the misrepresentations or provided explanations for the figures that were inconsistent with what the lenders would allow.

34. It was part of the conspiracy that RIVERNIDER, PONTE, SENECA and others caused to be represented in loan applications and other documents provided to the Victim Lenders a number of material misrepresentations, including, among others: (1) the true arms-length purchase price of the property (which was routinely markedly overstated); (2) the income earned by the respective Victim Borrower (which was routinely markedly overstated); (3) the assets of the Victim Borrower (which were often overstated); (4) the liabilities of the Victim Borrower (which were often understated); (5) the true earnest payments coming from the Victim Borrower (which were routinely fronted by RIVERNIDER, PONTE and SENECA); and (6) the true intended occupancy status of the properties (which, for example, were often represented to be second homes, when the intent was for them to be rental properties).

35. It was part of the conspiracy that SENECA, a trained mortgage broker, was actively involved in the real estate transactions put together with RIVERNIDER and PONTE, including organizing and gathering many of the materials needed by the Victim Lenders, gathering certain information from the Victim Borrowers, providing certain comparables based on properties brokered by RIVERNIDER to be used for purportedly independent appraisals, and a range of other background tasks necessary for the relevant loans to close.

Overt Acts

36. In furtherance of the conspiracy, and to accomplish its purposes and objects, RIVERNIDER, PONTE, SENECA and others, known and unknown to the Grand Jury, committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a. On or about May 8, 2007, PONTE signed as a witness on closing documents involving the property purchased by the Victim Borrower Donna M.

b. On or about March 8, 2007, PONTE emailed the Victim Borrower Robert B., forwarding an email from RIVERNIDER regarding the contract for a Tennessee property.

c. On or about March 8, 2007, PONTE emailed to the wife of the Victim Borrower Curtis W., forwarding a contract for a Tennessee property.

d. On or about March 23, 2007, PONTE discussed by telephone with the Victim Borrower Robert C. investing in cabins or condos.

e. On or about May 16, 2007, RIVERNIDER emailed PONTE about a real estate deal for the Victim Borrower Lisa G.

f. On or about May 24, 2007, PONTE emailed the Victim Borrower Alfred V. real estate investment options.

g. On or about July 2, 2007, PONTE emailed RIVERNIDER with information on settlement for the Victim Borrower Bruce P.

h. On or about July 13, 2007, PONTE's assistant emailed PONTE the signed contract from the Victim Borrower Michael Mc. and also forwarded the contract by email to RIVERNIDER.

i. On or about November 2, 2007, PONTE emailed the Victim Borrower Joel B., seeking him to fax asset information to a mortgage consultant for a real estate purchase.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TEN through EIGHTEEN - Wire Fraud
## 18 U.S.C. §§ 1343 & 2

### Scheme to Defraud the Victim Lenders and the Victim Borrowers

37. The allegations contained in Paragraphs 1-10, and 30-35 of this Indictment are realleged and incorporated as though fully set forth herein.

38. From in or about November 2006 through in or about December 2007, in the District of Connecticut and elsewhere, defendants RIVERNIDER, PONTE, SENECA and others known and unknown to the Grand Jury knowingly, willfully and with intent to defraud devised and intended to devise a scheme and artifice to defraud the Victim Lenders, including affecting a financial institution, and the Victim Borrowers to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is in substance set forth in ¶¶ 30-35.

39. The Victim Lenders extended a number of loans to the Victim Borrowers to purchase properties primarily in Tennessee and Florida. As a result of the scheme, the Victim Lenders and the Victim Borrowers were subjected to a risk of loss and suffered significant losses.

### The Execution of the Scheme and Artifice to Defraud

40. On or about the dates listed below, in the District of Connecticut and elsewhere, having devised and intended to devise a scheme and artifice to defraud the Victim Borrowers and the Victim Lenders, and for obtaining money and property from the Victim Borrowers and the Victim Lenders by means of materially false and fraudulent pretenses, representations and promises as set forth in ¶¶ 30-35, for the purpose of executing such aforementioned scheme and artifice, RIVERNIDER, PONTE and SENECA transmitted and caused to be transmitted by

means of a wire and radio communication in interstate commerce, the following writings, signs, signals, pictures and sounds, with each wiring constituting a separate Count of this Indictment as enumerated below:

| Count | Date of Wiring (on or about) | Origin of Wiring | Destination of Wiring | Description | Victim Lender (approx. closing date) | Victim Borrower |
|---|---|---|---|---|---|---|
| 10 | 3/19/2007 | FL | CT | Email from RIVERNIDER to PONTE regarding information for the loan for Victim Borrower Donna M. | Suntrust (5/8/07) | Donna M. |
| 11 | 3/08/2007 | CT | MI | Email from PONTE to Victim Borrower Robert B. forwarding email from RIVERNIDER for contract for Tennessee property | Suntrust (6/21/07) | Robert B. |
| 12 | 3/8/07 | CT | NY | Email from PONTE forwarding Victim Borrower Curtis W.'s wife a contract for a Tennessee property, to which she responds by email the same day | Suntrust (6/5/07) | Curtis W. |
| 13 | 3/23/07 | AZ | CT | Email from Victim Borrower Robert C. to PONTE regarding cabin/condos, following up a phone conversation | Suntrust (6/7/07) | Robert C. |

| Count | Date of Wiring (on or about) | Origin of Wiring | Destination of Wiring | Description | Victim Lender (approx. closing date) | Victim Borrower |
|---|---|---|---|---|---|---|
| 14 | 5/16/2007 | FL | CT | Email from RIVERNIDER to PONTE regarding a real estate deal with Victim Borrower Lisa G. | Wells Fargo (6/29/07) | Lisa G. |
| 15 | 5/24/2007 | CT | CO | Email from PONTE to Victim Borrower Alfred V. with investment options regarding condos | Wells Fargo (8/6/07) | Alfred V. |
| 16 | 7/2/2007 | CA | CT | Email from Victim Borrower Bruce P. to PONTE | Wells Fargo (6/29/07) | Bruce P. |
| 17 | 7/13/07 | NY | CT, FL | Email from PONTE's assistant to PONTE with the signed contract from Victim Borrower Mike Mc.; email also sent to RIVERNIDER | Wells Fargo (8/7/07) | Mike Mc. |
| 18 | 11/02/2007 | CT | AZ | Email from PONTE to Victim Borrower Joel B. seeking asset information for real estate deal | Wells Fargo (11/30/07) | Joel B. |

All in violation of Title 18, United States Code, Sections 1343 & 2.

## COUNT NINETEEN -- Tax Evasion (of Payment)
26 U.S.C. § 7201

### Background

41.     The allegations contained in Paragraphs 1-10, 15-20, 30-35 of this Indictment are realleged and incorporated as though fully set forth herein.

42.     During the 2001 calendar year, defendant PONTE earned taxable income by: the liquidation of two individual retirement accounts in his name held by the Vanguard Group, totaling $128,241; form W-2 wage income from his employment by Cognet Corp., totaling $57,635; and a form 1099-R pension distribution, totaling $13,935, relating to his withdrawal from the savings plan established by his former employer, Siemens Corporation.

43.     In the Spring of 2002, PONTE contacted a Certified Public Accountant he had used previously to prepare his federal personal income tax return for 2001. The accountant informed PONTE that he owed approximately $62,980 in taxes for the 2001 tax year. Despite credit for prior withholdings made by Cognet Corp. and a partial payment made by PONTE to seek an extension for the filing of the return until or about August 2002, PONTE remained with a significant outstanding tax liability.   Thereafter the Internal Revenue Service (IRS) sent notices to PONTE of his continuing tax obligation, including that, in December 2003, the IRS notified him that the deficiency had grown to approximately $76,632, including penalties and interest. PONTE periodically continued to receive notices of deficiency relating to his 2001 deficiency, including notices in 2004, 2008, and 2009.

## Evasion of Payment

44.  In or about November 2003 until in or about February 2010, in the District of Connecticut and elsewhere, PONTE did willfully attempt to evade and defeat the payment of a large part of the income tax, penalties and interest due and owing by him to the United States of America for the calendar year 2001, which by February 2010 totaled approximately $99,086, by one or more affirmative acts of evasion, including the following acts while living and working in Connecticut:

    a.    having in October 2006 opened a non-interest bearing checking account in the name of Falling Rock LLC, rather than in his own name, PONTE caused to be deposited income earned from the illegal ventures identified above in Counts One through Eighteen, including $5000 on July 9, 2007; $18,700 on August 17, 2007; $49,750 on Sept. 26, 2007; and $5000 on Nov. 7, 2007;

    b.    between March 2007 and July 2008, PONTE caused to be made from the Falling Rock LLC account one or more payments for leasing or maintaining a Mercedes stationwagon that was used primarily by him, but leased in the name of a former girlfriend, those payments made on or about the following dates March 9, April 17, June 8, June 26, July 5, August 8, August 30, October 4, November 20, November 30, December 21, December 28, 2007, and February 29, March 28, May 2, May 27, May 30, June 2, June 30, July 2, 2008, all totaling approximately $15,031;

c. between January 2007 and February 2009, PONTE caused to be made one or more payments toward a residence where he resided alone or with a girlfriend that was owned in the name of another person, including payments made on or about:

i. April 23, Sept. 17, October 1, October 10, and October 15, 2007, and March 25, May 28, June 2, and June 6, 2008, and February 9, 2009 for property tax, sewage or water usage, totaling $5,288;

ii. January 4, May 2, June 4, and December 20, 2007 and January 7, February 20, 2008 for heating oil, totaling $5670;

iii. June 14, July 9, July 12, August 13, October 10, October 16, October 22, November 6, and December 3, 2007 and March 18, June 3, 2008 for landscaping expenses, totaling $12,561;

iv. September 5, 2007 for partial construction expenses for a pool, totaling $7,600;

v. September 24, 2007 and January 8, 2008 for a privacy fence, totaling $3,040.

All in violation of Title 26, United States Code, Section 7201.

<u>COUNT TWENTY – Tax Evasion (of Assessment)</u>
26 U.S.C. § 7201

45. The allegations contained in Paragraphs 1-10, 15-20, 30-35, 44(a)-(c) of this Indictment are realleged as though fully set forth herein.

46. During the calendar year 2007, defendant PONTE, a resident of Stonington, Connecticut, had received taxable income in the sum of approximately $242,364, which reflected monies obtained from Cut Above Ventures, commissions from No More Bills and two invoices for computer services rendered the Company. Upon that taxable income, there was owing to the United States of America an income tax of approximately $58,701. Well knowing and believing

the foregoing facts, PONTE, on or about April 15, 2008, in the District of Connecticut, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year by failing to make an income tax return on or before April 15, 2008, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service the income tax, and by one or more of the affirmative acts of evasion taken during the 2007 tax year and continuing on or after April 15, 2008, as identified above at ¶ 44(a)-(c).

All in violation of Title 26, United States Code, Section 7201.

A TRUE BILL

/s/
FOREPERSON

_____
DAVID B. FEIN
UNITED STATES ATTORNEY

_____
JOHN H. DURHAM
COUNSEL TO THE UNITED STATES ATTORNEY

_____
CHRISTOPHER W. SCHMEISSER
ASSISTANT UNITED STATES ATTORNEY