UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITES STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 3:10-CR-222 (RNC) |
| | : | |
| ROBERT RIVERNIDER | : | |

RULING AND ORDER

      Defendant Rivernider has filed a pro se motion to stay his surrender pending appeal.  Section 3143(b) of Title 18 provides that a defendant may be released pending appeal if he is not likely to flee or pose a danger, the appeal is not for purposes of delay, and the appeal "raises a substantial question of law or fact likely to result in – (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment that is less than the total time already served plus the expected duration of the appeal." *Id.*  A "substantial question" means one that is close and so integral to the merits of the conviction that a contrary holding probably would require reversal of the conviction or a new trial.  *See United States v. Gladney*, No. 3:09cr117(MRK), 2011 WL 381561, at *3 (D. Conn. Feb. 2, 2011) (*citing United States v. Randell*, 761 F.2d 122, 124 (2d Cir. 1985).  For reasons stated below, the defendant's motion does not show the existence of a substantial question of law or fact under 18 U.S.C. § 3143(b) and his request for a stay is therefore denied.

      The indictment in this case, which was returned on October 5, 2010, charges the defendant and two others with conspiracy to commit wire fraud and wire fraud in connection with two related schemes to defraud, which have come to be known as the No More Bills Scheme and the Real Estate Scheme.  On February 25, 2013, after protracted pretrial proceedings and ten days of trial, Mr. Rivernider filed a petition to enter a plea of guilty (ECF No. 366), requesting permission to enter unconditional guilty pleas to all eighteen counts of the indictment.  At the change of plea proceeding, the defendant executed a sworn admission of offense conduct, which was incorporated into the petition.  The defendant's sworn statements in the

petition and in response to the Court's questions at the change of plea proceeding established that his guilty pleas were intelligent and voluntary and supported by an adequate factual basis as to every essential element of every offense. More specifically, the defendant's statements demonstrated that he had engaged in a conspiracy to defraud participants in the No More Bills program by deceiving them about the source of payments made to other participants, which served to mislead them about the risk associated with the program; committed wire fraud in furtherance of the No More Bills scheme to defraud, as alleged with specificity in the indictment; engaged in a conspiracy to defraud mortgage lenders and borrowers by making material misrepresentations and omissions concerning the nature of the deals and the risks associated with them; and committed wire fraud in furtherance of this scheme, again as alleged with specificity in the indictment. Throughout the two years of pretrial proceedings, at the trial itself, and at the change of plea, Mr. Rivernider was represented by able, experienced, diligent counsel. When asked at the change of plea whether he was satisfied with the services provided by his appointed counsel, Mr. Rivernider responded that they had been "wonderful." Mr. Rivernider's co-defendants also pleaded guilty, and the jury was discharged.

      Sentencing for Mr. Rivernider, initially scheduled for May 21, 2013, was delayed for pre-sentencing hearings concerning the amount of loss that should be used to calculate his guideline range, and his neurocognitive condition at the time of the offense conduct, which allegedly involved a deficit with regard to executive functioning. As a result of these hearings, the Court found that the amount of loss was reasonably estimated to exceed $20 million and that the defendant's neurocognitive condition did not warrant a downward departure for diminished capacity. The hearings on these issues having been completed, sentencing was scheduled to take place on December 18, 2013, more than ten months after the defendant pleaded guilty.

    With less than a week to go before the sentencing, Mr. Rivernider requested leave to file a pro se motion to withdraw his guilty pleas and dismiss the indictment. Leave to file the pro se motion was granted and the motion was addressed at the start of the sentencing hearing. The defendant made a lengthy statement in support of the motion, explaining why he believed he should be permitted to withdraw his pleas. In essence, he asserted that he had been coerced into pleading guilty and is actually innocent. The motion was denied for reasons

2

started on the record at the sentencing hearing, which need not be repeated in the present ruling, and the Court proceeded to impose sentence.

The applicable guideline range was calculated to be 324-405 months. For this defendant, a 48 year old first offender, such an extraordinarily long sentence for non-violent crimes would be plainly excessive. The defendant was given a non-Guidelines sentence of 144 months' imprisonment and ordered to self-surrender on January 29, 2014.

In support of his request for a stay of surrender pending appeal, filed on the eve of his surrender date, Mr. Rivernider contends that his pro se motion to withdraw his guilty pleas should have been granted on the basis of his allegations that his counsel coerced him into pleading guilty notwithstanding his innocence. As the Court noted at the sentencing hearing, the defendant's claim of innocence is contradicted by his petition to plead guilty, which includes his admission of offense conduct, and by his statements at the change of plea. *See* Transcript of change of plea proceeding, Feb. 25, 2013 (ECF No. 408). The defendant's claim that he was coerced into pleading guilty is also contradicted by his petition to plead guilty and his statements at the change of plea. At the change of plea, he stated—under oath—that his mind was clear and he felt capable of making important decisions, that he was fully satisfied with his counsel, that he had no need for a continuance, that nobody was pressuring him to plead guilty, that nobody had made any promises to him to get him to change his pleas, that he was in fact guilty and that he wanted to change his pleas to guilty because he believed it was in his best interest to do so. He also stated that he understood that if his request for a downward departure were denied, it would not provide a basis for withdrawing his guilty pleas. The defendants' prior sworn statements are conclusive in the absence of any credible reason justifying a departure from their apparent truth.

In support of his request for release pending appeal, the defendant also claims that his counsel were ineffective in various ways, but the alleged deficiencies do not affect the validity of his guilty pleas. He alleges that his counsel failed to obtain grand jury transcripts, failed to obtain a bill of particulars, failed to interview witnesses to develop impeachment material for trial, failed to aggressively investigate whether the victim banks knew everything about the real estate transactions making them willing co-conspirators, and committed certain

3

errors at trial.  Because these alleged deficiencies occurred prior to the entry of the guilty pleas and do not affect their validity, they do not provide a basis for reversal or a new trial.  *See United States v. Torres*, 129 F.3d 710, 715-16 (2d Cir. 1997) (declining to address an ineffective assistance claim where it was not an attack on "the voluntary and intelligent nature of the guilty plea" (*quoting Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973))).

In addition to the claims outlined above,  Mr. Rivernider asserts that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), principally by failing to disclose exculpatory evidence that the mortgage lenders were not deceived, and that the government engaged in other forms of misconduct, including intercepting privileged emails between the defendant and his counsel. An alleged *Brady* violation affects the validity of an unconditional guilty plea only when "there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial."  *Tate v. Wood*, 963 F.2d 20, 24 (2d Cir. 1992).  "[I]n order to set aside [a] plea, [an] independent examination of the record must convince [the Court] not merely that [defendant]'s decision would have been different but that the withheld information was objectively persuasive." *United States v. Abrams*, 205 F.3d 1325 (2d Cir. 1999); *see also United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998).

Here, the defendant has not shown that the government withheld material information.  Nor has he shown that his decision to change his plea was made in reliance on a misapprehension about the government's ability to prove its case. The defendant's principal claim is that the government has withheld evidence showing that the banks were complicit in the alleged mortgage fraud, rendering any misrepresentations and omissions in the loan documents immaterial.  At the change of plea, however, the defendant specifically started that the misrepresentations were material.   Even assuming the defendant could show that the government has withheld information showing that some or even all of the banks were not deceived, any such *Brady* violation does not affect the validity of his pleas based on the No More Bills Scheme, which alone support a sentence of imprisonment greater than the time served by the defendant in pretrial detention and the expected duration of any appeal.   The defendant's allegations concerning other forms of

4

government misconduct, such as interception of privileged emails, are unsupported and do not affect the validity of his guilty pleas.

Finally, the defendant challenges the amount of actual loss used to calculate his guideline range, arguing that it is vastly overstated. This argument does not provide a basis for reversal or a new trial. At most, it could provide a basis for a reduced sentence. The sentence the defendant received reflects a significant variance from the guideline range based in part on a determination that the amount of the loss substantially overstates the defendant's culpability, resulting in an excessive guideline range. Any adjustment of the loss amount used to calculate the range would not result in a further sentence reduction to a term of imprisonment less than the time already served and the expected duration of the appeal.

The Court has considered the defendant's other allegations and finds that none of them raises a substantial question of law or fact justifying release pending appeal.

Accordingly, the defendant's motion to stay his surrender pending appeal is hereby denied. The defendant will surrender as directed by no later than 11:00 a.m. on January 29, 2014.

So ordered this 28th day of January 2014.

    /s/ RNC
Robert N. Chatigny, U.S.D.J.