```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| v. | : | CASE NO. 3:10-cr-222(RNC) |
| | : | |
| ROBERT RIVERNIDER | : | |

## RULING AND ORDER

Pending is the defendant's second motion for a reduction in sentence pursuant to the First Step Act of 2019, ECF No. 747, which is largely duplicative of his first motion. The government opposes the motion, as it did the first one. The motion is denied for substantially the same reasons that were provided in the ruling denying the first motion. Like the previous denial, this denial is without prejudice to the filing of a new motion. However, no further motion should be filed and, in any event, no such motion will be granted, unless the defendant is able to point to changes in his present circumstances that provide extraordinary and compelling reasons to warrant a reduction in his sentence consistent with the Sentencing Commission's policy statement on compassionate release. See U.S.S.G. § 1B1.13 and Commentary.

### I. Background

In December 2013, the defendant was sentenced to 144 months' imprisonment for conspiracy to commit wire fraud (2 counts) and wire fraud (16 counts). The defendant pleaded

guilty in the middle of a multiweek, multidefendant jury trial, then, months later, he attempted without success to withdraw his guilty pleas. His convictions and sentence were affirmed on direct appeal. See United States v. Rivernider, 828 F.3d 91 (2d Cir. 2016). His habeas petition, encompassing scores of claims, remains pending.

The offense conduct to which the defendant pleaded guilty encompassed his activities as the organizer and leader of two conspiracies involving wire fraud: an investment scheme that foreseeably caused losses of more than $2 million to numerous individual victims for whom the financial losses were life-altering; and a real estate scheme that resulted in losses to mortgage lenders of more than $23 million, as well as additional harm, both economic and non-economic, to numerous individuals. Due primarily to the extent of the financial losses resulting from the real estate scheme, but also because of, inter alia, the number of victims of both schemes and the sophistication of the schemes, the defendant's total offense level under the federal sentencing guidelines was 41, in criminal history category I, resulting in a guideline range of 324 to 405 months. The government sought a sentence within the range; the defendant sought a substantial departure or variance.

The defendant's final sentence of 144 months, a 55% reduction from the bottom of the range, took account of the

excessiveness of the guideline range for a non-violent, first-time offender. In addition, a substantial variance was warranted in light of a combination of factors, including the defendant's age (48 at the time of the sentencing); his family ties and responsibilities as the father of two young children; his lack of criminal intent at the outset of the first scheme; the minimal financial benefit he derived from the schemes compared to the amounts of the financial losses sustained by victims; and, most importantly, an untreated mental condition that likely was a factor in his offense conduct and thus mitigated his culpability.

The defendant began serving his sentence in January 2014, approximately 71 months ago. He has therefore served a little less than half of his sentence of 144 months. His projected release date is March 1, 2024.

The defendant is serving his sentence at Estill Federal Correctional Institution ("FCI Estill") in South Carolina. In early 2018, he had a heart attack, which required triple bypass surgery and follow-up medical care at another facility. Since his return to FCI Estill, he has reported some chest wall pain, but his condition has been repeatedly reported as "stable." In light of this, the defendant's previous motion for compassionate release was denied. In the present motion, the defendant does not allege any significant change in circumstances regarding his

heart condition, except to argue that the ongoing stress of confinement puts him at increased risk of another heart attack. During the defendant's incarceration, his mother has passed away. His two children remain in the care of their mother.

## II. Legal Standard

The First Step Act of 2019, in a section entitled "Increasing Use and Transparency of Compassionate Release," modified the compassionate release statute to enable a federal prisoner to petition the sentencing court for a reduction in his sentence. See 18 U.S.C. § 3582(c)(1)(A). Under the previous version of the statute, federal courts could grant compassionate release only on a motion by the Director of the BOP. Such motions were rarely filed.

In eliminating the requirement of a BOP motion, Congress did not modify the substantive standard governing eligibility for compassionate release. Now, as before, a federal prisoner may qualify for compassionate release if (1) "extraordinary and compelling" circumstances warrant a reduction in his sentence; and (2) a reduction would be "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[1]

---

[1] If these requirements are satisfied, the court has discretion to reduce the term of imprisonment after considering the sentencing factors in 18 U.S.C. § 3553(a).

The applicable policy statement is found in U.S.S.G. § 1B1.13 and Commentary. The Sentencing Commission formulated this policy statement pursuant to 28 U.S.C. § 994(t).[2] As originally adopted in 2006, the policy statement essentially deferred to the judgment of the Director of the BOP, the gatekeeper under § 3582(c)(1)(A) at the time, concerning the existence of extraordinary and compelling reasons for compassionate release in any given case. See U.S.S.G. § 1B1.13, and Commentary, effective Nov. 1, 2006 (Amendment 683)(Application of Subsection (1)(A) ("A determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such for purposes of subdivision (1)(A)")). Criticisms of the BOP process for compassionate release led the Commission to substantially revise the Commentary to § 1B1.13. See id., effective Nov. 1, 2016 (Amendment 799). The Commentary now provides four categories of criteria for compassionate release: "Medical Conditions of the

---

[2] In 28 U.S.C. § 944(t), Congress directed the Commission to issue a policy statement regarding the "sentencing modification provisions in section 3582(c)(1)(A)." In particular, Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress specified that "Rehabilitation of the defendant alone shall not be an extraordinary and compelling reason." Id.

Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." With regard to the last category, sometimes referred to as the "catchall" or "residual" category, "extraordinary and compelling reasons exist" when,

> [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The requirement of a determination by the Director of the BOP that "Other Reasons" exist to support a sentence reduction under the residual category has not been revisited by the Sentencing Commission since the First Step Act eliminated the requirement of a motion by the BOP. District court opinions have diverged concerning the need for a determination by the Director of the BOP that extraordinary and compelling reasons exist to support a sentence reduction under the residual category when the defendant has directly petitioned for a sentence reduction pursuant to the First Step Act. Compare United States v. Lynn, No.89-cr-0072-WS, 2019 WL 3805349, at *3-*4 (S.D. Ala. Aug. 13, 2019) (rejecting arguments that the residual category's reference to a BOP determination is no longer binding and concluding that BOP still serves as the "gatekeeper regarding the residual category"), appeal docketed, No.19-13239 (11th Cir. Aug. 20, 2019) with United States v. Beck, No. 1:13-cr-186-6, 2019 WL 2716505, at *5-*6 (M.D.N.C.

June 28, 2019) ("By its terms, the old policy statement applies to motions for compassionate release filed by the BOP director and makes no mention of motions filed by defendants. . . . [I]t does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(I)."). In ruling on the defendant's previous motion, I joined Judge Hornby in concluding that although a BOP determination is no longer required for a sentence reduction in a case under the residual category, a sentence reduction still must be "consistent" with the Commission's policy statement. See ECF No. 753, at *6-*7 (quoting United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019)). I adhere to that view.[3]

---

[3] The Government takes the same position as the Court in Lynn, arguing that the "express language" of the Commentary requires that "the BOP must have the opportunity to at least initially assess the 'other reasons.'" Govt. Br., at *3. I again reject this argument, and also note that BOP is ensured "the opportunity to at least initially assess" a defendant's arguments by the administrative exhaustion requirement. The Government does not argue that the defendant failed to exhaust administrative remedies before filing the present motion. Thus, I conclude that BOP has had "the opportunity to at least initially assess" the defendant's arguments.

III. Discussion

Defendant argues that the following circumstances, individually and collectively, provide "extraordinary and compelling reasons" warranting his compassionate release:

1. I wrongly rejected the claim in his habeas petition that his guilty pleas were coerced by his counsel.
2. I erred in sentencing him on the incorrect assumption that he had no empathy for his victims.
3. I erred in sentencing him because he actually did make some payments to victims "out of the goodness of [his] heart," rather than as "smoke-and-mirror" payments pursuant to the fraudulent scheme to which he pleaded guilty.
4. I erred in sentencing him because the Government withheld relevant bank records.
5. His medical condition warrants his immediate release.
6. When he pleaded guilty he expected to receive a much lesser sentence than the one I imposed.
7. I erred in sentencing him by treating certain institutional lenders as victims.
8. His counsel were ineffective in failing to object to the inclusion of the lenders as victims.
9. He was misled into pleading guilty because he would not have changed his plea if he had known he could get a sentence of 10 years or more.

10. His continued confinement has negative consequences for his family, especially his children.

11. His counsel violated the ABA rules of professional conduct because he did not want to plead guilty.

12. I penalized him at sentencing for seeking to withdraw his guilty plea.

13. A delay in fully adjudicating his habeas petition has resulted in prejudice to him.

14. The level of coercion he experienced to plead guilty, even if insufficient for purposes of habeas relief, is sufficient for purposes of compassionate release.

15. His decision to change his pleas and the sentence he received are tainted by a witness's perjury.

16. The Government's attorneys have lied to the Court on multiple occasions, including about his medical care in prison.

Def. Br., at *8-*18.

None of these circumstances, alone or in combination, provides a basis for compassionate release.

    A.   <u>Guilty Pleas and Sentence</u>

The defendant's assertions concerning his guilty pleas and sentence are substantially the same as assertions he made in his first motion for compassionate release. In denying that motion, I stated that none of the defendant's assertions

> is comparable to the Commission's criteria for compassionate release. Therefore, the Court cannot find that granting the present motion would be consistent with applicable Sentencing Commission policy.

ECF No. 753, at *7. I continue to believe that defendant's assertions concerning his guilty pleas and sentence do not provide a basis for compassionate release.

Under the First Step Act, the reasons for reducing a sentence of imprisonment must be "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(I). The applicable policy statement permits a sentence reduction for reasons related to the defendant's advanced age, physical or mental infirmity, and exigent family circumstances. Other reasons that may satisfy the "extraordinary and compelling" standard under the residual category have been suggested: the defendant's youth at the time of the offense conduct, the defendant's extraordinary rehabilitation, and changes in sentencing policies and penalties. See Sarah French Russell, Second Looks At Sentences Under the First Step Act, 32 Federal Sentencing Reporter 76, 77-79 (Dec. 2019). To my knowledge, nobody has suggested that the "extraordinary and compelling" standard can be satisfied by claims of legal error or other alleged wrongs that are cognizable on direct appeal from a conviction or by means of a habeas corpus petition. See United States v. White, No. 93-97 (BAH), 2019 WL 3719006, at *24 (D.D.C. Aug. 6, 2019) (rejecting attempts to "us[e] [a different section of the First Step Act's]

limited congressional act of lenity for a collateral attack on" defendants' convictions and noting that "the proper vehicle for" such arguments is a habeas petition).

Perhaps the "extraordinary and compelling" standard in the residual category may permit legal errors that are no longer subject to correction on collateral attack to be given weight, as an equitable matter, in the context of a case involving an extraordinarily long sentence in which the factors explicitly mentioned in the Commission's policy statement are present to a substantial degree. But this is far from such a case: the defendant's arguments concerning his guilty pleas and sentence rehash arguments that failed on direct appeal, or are part of his still pending habeas case; he received a very substantial variance and has thus far served about 71 months; the factors explicitly mentioned in the Commission's policy statement are not present to a substantial degree; and the other factors the defendant cites in his motion are not reasonably encompassed by the "extraordinary and compelling" standard. Accordingly, I adhere to my view that the defendant's arguments concerning his guilty pleas and sentence do not provide a basis for relief here.

B. Medical Condition

As mentioned, the defendant's medical condition appears to be substantially the same as it was when I denied his first motion for compassionate release. The defendant's concerns about the medical care he has received are not unfounded, as I acknowledged in the

ruling denying his first motion. ECF No. 753, at *6. But his heart condition is not nearly as grave as the medical conditions that have been found to justify compassionate release in other cases. See United States v. Ebbers, No. 02-cr-1144-3 (VEC), 2020 WL 91399, at *5, (S.D.N.Y. Jan. 8, 2020) ("The Medical Condition Note . . . highlights 'terminal illness' and 'serious conditions and impairments,' including 'advanced dementia' and other diseases associated with an 'end of life trajectory.'"). See also id. at *5 n.8 (collecting cases); e.g., United States v. Willis, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (granting compassionate release where defendant was wheelchair bound, blind, required 24/7 care, and was given a prognosis of 18 months to live). And, as I concluded in denying his first motion, the defendant has not demonstrated that his heart condition "substantially diminishes [his] ability . . . to provide self-care" at FCI Estill. U.S.S.G. § 1B1.13, A.N. 1(A)(ii)(I); ECF No. 753, at *6.

Defendant's response to his medical providers' repeated conclusions that his heart condition is stable is simply that "'STABLE' is insufficient.'" Def. Br., at *10. But the applicable Sentencing Commission policy statement requires that any medical condition "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, A.N. 1(A)(ii)(I). My decision on the defendants' motion must be "consistent" with the policy statement. 18 U.S.C. § 3582(c)(1)(A)(I). Defendant has not

provided or alleged the existence of any evidence that would indicate he has a diminished capacity for self-care because of his condition, and, indeed, he seems to accept the premise that his condition is stable. Accordingly, his medical condition does not, at this time, present an "extraordinary and compelling" reason to grant relief.

    C.    <u>Family Circumstances</u>

The defendant's argument concerning the hardship his continued confinement imposes on his family is repetitive of the argument he made in his first motion, which I rejected as insufficient to justify compassionate release. <u>See</u> <u>ECF</u> No. 730, at *7, No. 753, at *7. The defendant alleges that his children have had "to grow up in poverty and without their dad." Def. Br., at *14-*15. Accepting these allegations as true, they do not satisfy the "extraordinary and compelling" standard.

The applicable policy statement provides that compassionate release may be granted due to family circumstances in the event of

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children. [or]
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13, A.N. 1(C). Defendant does not allege that the caregiver for his children has died or become incapacitated.

Nor do the defendant's allegations concerning his children provide a basis for relief under the residual category. The

circumstances he alleges are unfortunately not at all "extraordinary." See United States v. Shields, No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4-*5 (N.D. Cal. June 4, 2019) (rejecting defendant's argument that his family circumstances, including a minor child with severe epilepsy that required supervision and a spouse who worked full-time and was incapable of providing said supervision, amounted to "extraordinary and compelling" circumstances because "the same could be said of *any* inmate who has young children and a spouse who must work"). Congress has delegated to the Sentencing Commission the responsibility of determining the acceptable level of hardship that a family enduring incarceration of a parent must endure. "Absent some guidance from the Sentencing Commission . . . holding that such circumstances rise to the level of 'extraordinary and compelling,' this Court cannot conclude that [defendant] has established grounds for a reduction in his sentence." Id.

D. Other Arguments

Defendant argues that an "[e]xtraordinary delay in processing" his habeas petition has "caused prejudice." Def. Br., at *17. Defendant filed a habeas petition alleging thirty-five grounds for relief on July 11, 2014. See Rivernider v. United States, No. 14-cv-01000, ECF No. 1. His petition was made prior to the completion of his direct appeal, and I stayed proceedings on the habeas petition until the conclusion of his direct appeal, which took place on September 21, 2016. Id., ECF No. 18. Despite the stay,

defendant sought to add an additional 17 claims to his habeas petition. Id., ECF Nos. 25, 32, 51. In consultation with the parties, in November 2016, I decided to prioritize defendant's primary claim that his guilty pleas were coerced by his appointed counsel, and stayed all other claims. Id., ECF No. 29. Defendant, despite the stay, filed numerous motions on a number of his stayed claims. See, e.g., id., ECF Nos. 33, 37, 42, 44, 47, 49, 51, 52, 53, 63, 72. His coercion claim was litigated at length, including four days of evidentiary hearings in January, February, and March 2018, followed by supplemental briefing. See id., ECF Nos. 146, 147, 149. Following the supplemental briefing but prior to my decision on the coercion claim, defendant submitted several more substantive motions, including motions seeking default entry against the government for failing to respond to stayed claims. See, e.g., id., ECF Nos. 175, 180, 185. On June 17, 2019, I rejected the defendant's coercion claim, and ordered the parties to confer and set a schedule to present briefing on the remainder of the claims. Id., ECF No. 198. At a status conference on July 31, the parties and I agreed that the defendant's standby counsel would file a brief on or before September 30 showing why the defendant is entitled to relief on his remaining claims, and the government would thereafter have 45 days to file a response. Id., ECF No. 205. Defendant filed a brief on October 4, id., ECF No. 219, and the government responded on November 25, id., ECF No. 222.

Given the foregoing history, the delay in adjudicating the defendant's habeas petition is not extraordinary. Moreover, no case has been cited or found that suggests delay in habeas litigation provides a basis for compassionate release.[4] Congress has conferred on the Sentencing Commission authority to provide guidance on what constitutes an "extraordinary and compelling" circumstance justifying compassionate release. The Commission has responded with U.S.S.G. § 1B1.13, A.N. 1(A)-(D). I cannot order compassionate release unless it is "consistent" with that policy statement. § 3582. Nothing in the policy statement authorizes compassionate release based on the length of time taken to reach a final decision on a habeas petition.

Finally, the defendant argues that he should be released because the government has lied to the court about his medical condition. The defendant takes issue with the government's statement, made on December 12, 2018, that he "ha[d] a pending consultation with a cardiologist." Def. Br., at *18. Medical records provided to the court indicate that on November 30, 2018,

---

[4] Defendant cites Calley v. Callaway, 496 F.2d 701 (5th Cir. 1974), for the proposition that an "extraordinary delay in processing a § 2255 motion" is an extraordinary circumstance. Calley states that "extraordinary delay in processing a habeas corpus petition" is "possibly" an extraordinary circumstance justifying granting bail to a military prisoner. Id. n.1. Calley does not support the proposition that "extraordinary delay in processing a habeas corpus petition" is an "extraordinary and compelling reason" to grant a motion for compassionate release.

defendant's medical provider requested an offsite cardiology consultation, which was pending at the time the government made the disputed statement.  In view of the medical records, I cannot conclude that the government's lawyers "lie[d]" when they said the defendant had a pending consultation with a cardiologist.  Even if the government had undertaken to mislead me concerning the defendant's medical condition, compassionate release would not be in order unless the defendant's actual condition warranted his release.  As discussed above, that is not the case.[5]

IV. Conclusion

Accordingly, the motion is hereby denied.

So ordered this 7th day of February, 2020.

_____/s/ RNC_____
Robert N. Chatigny
United States District Judge

---

[5] The defendant also accuses the government of lying about "the law."  No such misconduct has been shown and compassionate release would not be an appropriate remedy for such misconduct in any event.