IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>ROBERT RIVERNIDER,<br><br>Defendant | CRIM. NO. 3:10CR222 (RNC)<br><br>March 20, 2020 |

RESPONSE TO DEFENDANT'S EMERGENCY MOTION
FOR IMMEDIATE RELEASE REGARDING CORONAVIRUS [Doc. 769]

The defendant Robert Rivernider has moved for release in light of his current health condition and the current COVID-19 spread. [Doc. 769] [*See also* Doc. 233 in defendant's 2255 action, 3:14CV1000 (RNC)]. The Court ordered a response on or before March 23, 2020 [Doc. 770]. Specifically, the Court requested:

> The response should include guidance with regard to what measures the Bureau of Prisons is taking in general, and with regard to the defendant in light of his medical history. The response should also include an update with regard to the defendant's care and treatment with a cardiologist. So ordered. *Id.*

The Defendant's Medical Condition

To address the Court's request, the undersigned reached out to representatives of the BOP. Attached at Attachments A, B, C, D and E (filed under seal because of the attachment contain medical information) are the responses received from the BOP, including

- a medical update regarding the defendant from the Clinical Director at FCI Estill, Attachment A (received on March 19, 2020);

- a response from the Assistant Health Services Administrator at Estill, Attachment B;

- Medical Records (21 pages), Attachment C;

1

- Medical Records (123 pages), Attachment D; and

- Medical Records (84 pages), Attachment E.

The records reflect that FCI Estill is aware of the defendant's current conditions and have been addressing them.

BOP's and FCI Estill's Response to COVID-19

The BOP representatives also reached out to FCI Estill and confirmed that FCI Estill is following the BOP's COVID-19 response plan, which is updated as matters develop and can be found at:

https://www.bop.gov/resources/news/20200313_covid-19.jsp

https://www.bop.gov/coronavirus/index.jsp

In addition, BOP representatives reached out to FCI Estill and, upon consultation with the Warden, FCI Estill provided the following additional information:

- FCI Estill is following the BOP national plan (noted above) on COVID-19.
- In fact, FCI Estill has a modified operations plan at FCI Estill for COVID-19 (see discussion below).
- For inmates who test positive for COVID-19, FCI Estill has designated an empty housing unit as a location to isolate or quarantine inmates, as needed.
- FCI Estill is continuing to provide access to outside hospital services, as required. FCI Estill's Health Services staff are closely monitoring inmate health related activity and are screening each inmate upon return form an outside hospital trip.
- FCI Estill is staggering meals, recreation, work duty, etc.

FCI Estill has developed certain additional procedures for its current modified operations:

- Inmates who are newly committed to the institution, or returning from writ, will be screened by medical staff and quarantined 14 days prior to being released to general population.
- Inmates are released to Food Service for meals, one unit at a time. There is no self-serving of food. All eating utensils and drinkware are served by Food Service workers, wearing proper Protective Personal Equipment.
- Only essential contractors are allowed into the institution.
- All volunteers have been restricted from entering the institution.

- All inmate social visits have been canceled.
- Education, Recreation, and Religious Services programming is staggered, to aid with social distancing.
- Inmate work details have been limited to "skeleton crews" of one to two inmates, to accomplish the mission while limiting contact.
- The Warden is approving legal visits on a case-by-case basis.
- Inmates have been provided 100 additional phone minutes to maintain contact with their friends and families.
- Inmates have been provided information on the COVID-19 procedures, symptoms, and necessary precautions, via Trulincs postings, Town Halls, and regular communication with staff.
- The Occupational Safety and Health Department has been distributing additional chemicals and supplies to work detail, units, and high traffic areas to aid with increased sanitation. Additionally, foam hand soap dispensers have been provided to work details and high traffic areas for inmate use. Clorox wipes have also been provided to the Unit Teams.
- Effective March 20, 2020, at 6:00 a.m., anyone entering the institution grounds will be medically screened.

As of the drafting of this response, no inmate or staff at FCI Estill has been diagnosed with COVID-19. Further, BOP administrators and staff, as reflected above, have established comprehensive precautionary measures to limit the risk of transmission of COVID-19 into FCI Estill.

Procedural Posture of the Case

The defendant has in the past raised various arguments for release, including his pending 2255 action; allegations regarding present conditions of incarceration that might constitute a 2241 action if brought in the jurisdiction in which FCI Estill sits; and allegations for compassionate release under the First Step Act.

The present emergency motion raises potential health related concerns and thus is most appropriately dealt with as a 2241 motion regarding his present conditions of incarceration. (The claim would not appear to constitute a basis for relief under his 2255 action, which focus on the merits of his underlying prosecution.) As the Court has previously ruled, matters regarding the

3

defendant's present conditions of incarceration are within the purview of the district court in the District in which FCI Estill sits. *See, e.g.,* Order re: alleged denial of necessary medical care, Docket # 216 (3:14CV1000); Docket # 750 (8/6/19) (3:10CR222). That District can better assess the conditions of its facility.

To the extent this motion is deemed another request for compassionate release, the current record does not establish that the defendant has a present medical condition, age or family circumstances that warrants release under the First Step Act. Currently there are no diagnosed cases of COVID-19 at FCI Estill, and the defendant does not allege that he has COVID-19 or has been exposed to any individuals with COVID-19. In this way, the defendant is not seeking release based on his actual physical and mental health. Instead he relies solely on the possibility of becoming infected – a claim that could be raised by many other inmates. In short, it appears that the defendant is seeking release under the "other reasons" catchall or residual category that the alleged risk of infection creates an extraordinary and compelling circumstance justifying compassionate release.[1]

While the spread of COVID-19 is both unsettling and plainly raises cause for great public concern, the present circumstances under the present facts do not rise to a level warranting release. To find so in this case would literally open the prison gates for most of the current inmate population. As discussed above, FCI Estill has implemented and continues to implement substantial precautionary measures to mitigate infection risk. It should also be noted, as reflected on the BOP website, that the BOP has substantial experience dealing with protocols for infectious

---

[1] The Government submits that the defendant has also not met the administrative exhaustion requirement. The Government acknowledges that the Court does not interpret that the First Step Act retains this exhaustion requirement under the residual category, *see* Court Ruling [Doc. # 766 at 7], but the Government continues to press the issue to preserve the record.

diseases to limit outbreaks at BOP facilities.  The above information also makes clear that the BOP recognizes the unique threat posed by the transmission of viruses inside its facilities, and longstanding policies and procedures are already in place to reduce the risk that outbreak does not occur of many serious diseases, such as HIV/AIDS, MRSA, sexually transmitted diseases, viral hepatitis, tuberculosis, and seasonal influenza.   BOP plainly recognizes that COVID-19 carries an increased risk of transmission; that COVID-19 carries a higher fatality rate than many other viruses; and that the COVID-19 situation has resulted in a state of emergency.  But BOP and FCI Estill have instituted more searching measures to address these heighted circumstances, as noted above.

Further, as it relates to this particular defendant, while he has undergone serious heart surgery to repair a previous condition, the present medical record provided by the BOP gives all indications that the surgery was successful; that an exercise stress test was performed on December 5, 2019, was reviewed and is considered by his providers to be "a normal stress test."  And his medical care is subject to continued review.   In short, the defendant's medical condition does not appear to create a circumstance so different from the general prison population to warrant release. In fact, the defendant has not established that the significant restrictions imposed by the BOP setting and, more specifically, at FCI Estill in particular, when contrasted to the voluntary compliance sought outside the prison walls puts the defendant at increased risk of infection or more limited treatment options than available to the general public. *United States v. Davis,* 19-1604, slip op. (3rd Cir. March 20, 2020) (denying emergency motion for release pending appeal brought by the defendant, a 69 year old with multiple health issues, including asthma, heart arrhythmia, history of prostate cancer, high blood pressure)[2]; *United States v. Gileno*,

---

[2] The appellee's response and the slip opinion are attached at Attachments F & G.

2020WL1307108 (D.Conn. March 19, 2020) (rejecting reduction in sentence to home detention based on COVID-19 pandemic) (VAB, U.S.D.J.); *Nikolic v. Decker*, 2020WL1304398 (S.D.N.Y. March 19, 2020) (denying habeas release despite COVID-19 health crisis); *Cf. Dawson v Asher*, 2020WL1304557 (W.D. Washington March 19, 2020) (denying motion for TRO brought by detainees with heightened risk of illness or death from COVID-19 because of age or medical condition in civil immigration case); *United States v. Martin*, 2020 WL1274857 (March 17, 2020) (U.S.D.C., D.MD) (Denying appeal of pretrial detention order, noting measures taken to protect detainees from COVID-19 virus). *But cf. United States v. Stephens*, 2020WL1295155 (S.D.N.Y. March 19, 2020 (reconsidering prior ruling and allowing pretrial release based on concerns regarding COVID-19 and ability to prepare defense). As a result, there is not sufficient reason for the Court to change its most recent ruling of February 7, 2020, denying the defendant's motion for compassionate release. Doc. 766.

While the COVID-19 virus is new, health claims by inmates are not. Courts have generally recognized that it is a rare case in which health conditions present an exceptional reason to allow for release where otherwise detention would be warranted. *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008). These cases recognize that reasonably necessary treatments are available in prison, and often times a prison setting will provide superior care than a defendant can obtain on the outside. *United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999). In this case, the present factual record is that the defendant is obtaining appropriate medical care and that his needs will be met while detained. Further, to the extent that circumstances change, the district court in the district where the defendant is incarcerated is the more appropriate forum to address the defendant's claims.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for emergency release.

        Respectfully submitted,

        JOHN H. DURHAM
        UNITED STATES ATTORNEY

        */s/Christopher W. Schmeisser*

        CHRISTOPHER W. SCHMEISSER
        ASSISTANT U.S. ATTORNEY
        Federal Bar No. ct14806
        christopher.schmeisser@usdoj.gov
        157 Church Street, 25TH Floor
        New Haven, CT  06510
        Tel.: (203) 821-3700
        Fax: (203) 773-5377

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 20, 2020, a copy of the foregoing response was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

A copy of this Response has been sent to:

Robert Rivernider, Jr.
Reg. No. 96006-004
FCI Estill
P.O. Box 0699
Estill, SC 29918

                                                  */s/   Christopher W. Schmeisser*
                                                  Assistant United States Attorney