UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT RIVERNIDER | : |
| | : Civil No. 3:10CR222 (RNC) |
| v. | : |
| | : |
| UNITED STATES OF AMERICA | : February 13, 2026 |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO VACATE TRANSFER ORDER AND FOR IMMEDIATE RELEASE [DOC. ## 869, 868]

The defendant, *pro se*, has now moved to vacate the transfer of jurisdiction of this case from the District of Connecticut (3:10CR222 (RNC)) to the Middle District of Florida (5:24CR138 (TPD)-PRL-1) for purposes of supervised release, with the prior transfer order entered on or about December 9, 2024, more than a year ago [Docket # 869]. In this motion, the defendant now claims that the transfer was obtained by fraud on this Court, asserting that the Probation Officer in Florida did not disclose at the time of the transfer that he intended to pursue violations of supervised release that occurred prior to the transfer date [Doc # 869 at 3], including alleged violations that occurred on November 4, 2024 (failure to report); October 18, 2024 (failure to file financial report); May 2024 (failure to pay restitution when the defendant was incarcerated on a state case); and an additional violation in August 2025 (after the defendant alleges the original period of supervised release had expired), which took place nine months after the entry of the transfer order and the transfer of the case. *Id.* at 3.

The defendant also moves this Court for immediate release, [Docket # 868], on the theory that the transfer of jurisdiction was invalid and thus any violations of supervised release found by the District Court in Florida and the related imposed three-year term of incarceration are invalid. *Id.* at 2.

1

As will be discussed below, the defendant's motions are baseless. The defendant's present motions, brought more than a year after jurisdiction over supervised release was formally transferred to Florida, are no more than a transparent effort at an end-around the efforts already taken by the Middle District of Florida to enforce violations of supervised release as the jurisdiction that accepted responsibility to oversee the defendant's supervised release. To the extent the defendant has any challenges to the Florida District court's findings of violations of supervised release and the jurisdiction to do the same, those challenges would lie with the Florida appeals court presently already addressing those matters.

Florida has always been by far the most logical location to oversee the defendant's supervision as he has lived in Florida for much of his adult life, along with various close family members. Here, the process for entry of the transfer order was appropriately followed, and the relevant magistrate, District Court and appeals court in Florida appear to be appropriately handling remaining issues of supervised release. There is no basis for this Court to reconsider those ongoing matters, and, in fact, there is question whether this Court would have jurisdiction to do so at this point, having transferred jurisdiction.

The Government respectfully requests that for the reasons stated herein, the defendant motions to Vacate the Transfer Order [Doc. 869] and for Immediate Release, [Doc. 868] be promptly denied.

Procedural Background

<u>The Original Criminal Case in Connecticut, 3:10CR222 (RNC)</u>

As noted above, from the time of the indictment until the present, with the exception of the time the defendant was incarcerated, the defendant, as well as members of his family, lived in Florida.

As the Court is very well aware, the defendant pled guilty in the original criminal case in Connecticut (3:10CR222 (RNC)) in February 2013 [3:10CR222 Doc. 367] with sentencing and judgment entered in December 2013 [3:10CR222 Doc. 577, 583], and with the defendant sentenced to a term of incarceration of 144 months, with 5 years of subsequent supervised release [3:10CR222 Doc. 583]. The defendant's conviction was affirmed on appeal. Despite having served only a little more than half of his sentence, the defendant application for compassionate release was granted as a result of the pandemic, and the defendant was ordered released on or about May 12, 2020 [3:10CR222 Doc. 785, 787]. While the defendant had certain ongoing issues on supervised release while the case remained in Connecticut, resulting in a revocation hearing on those issues on August 1, 2023 [3:10CR222], the defendant was not reincarcerated in Connecticut at that time.[1]

Transfer of Criminal Case to the Middle District of Florida

According to Docket entry 1 in *U.S. v. Rivernider*, 5:24CR138-TPB-PRL-1, this Court signed a Transfer of Jurisdiction form, reflecting in Part 1 the order transferring to Florida the Connecticut criminal case. *Id.* The Transfer Order appears to have been signed by this Court on March 28, 2024. *Id.* The Transfer of Jurisdiction Order gave the Justification/Reason for Transfer as "Mr. Rivernider has established himself in the Middle District of Florida. He has no ties to Connecticut and no plans of returning to Connecticut." (In fact, it is the undersigned's

---

[1] As a backdrop to the ongoing criminal action, the defendant pursued various forms of collateral relief, as the Court is well aware, attacking the convictions and sentence. Defendant's Section 2255 motion was filed in July 2014 [3:14CV1000 Docket # 1]. After years of litigation, myriad motions, and extensive evidentiary hearings, the Court dismissed the Section 2255 motion in September 2022, with no certificate of appealability. [3:14CV1000 Doc. 259]. The defendant appealed and that appeal was dismissed, with the Mandate issuing in September 2023 [Doc. 269].

3

understanding that Mr. Rivernider never lived in Connecticut, but, instead, Connecticut was where a co-defendant and one or more victims resided.)  The order continued:

> It is hereby ordered that pursuant to 18 U.S.C. Section 3605, the jurisdiction of the probationer or supervised release named above be transferred with records to the Court of the United States District Court for the Middle District of Florida upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this court.

*Id.*

The District Judge in the Middle District of Florida signed Part 2 of the Transfer of Jurisdiction document accepting jurisdiction on December 9, 2024, ordering that "jurisdiction over the above-named probationer/supervised releasee be accepted by this Court [in Florida] from and after then entry of this order," which order was subsequently received by the Clerk's Office in Connecticut and entered on the docket of the criminal case in Connecticut on December 11, 2024, again more than a year ago [3:10CR222 Doc. 864].

<u>The Transferred Criminal Case in the Middle District of Florida</u>

Since the Florida court assumed jurisdiction over the defendant's criminal case in December 2024, the docket for the case 5:24CR138-TPB-PRL-1 reflects 127 entries as of January 7, 2026, reflecting that the relevant magistrate and district court have been fully engaged in the case, addressing various writs, petitions, motions, emergency motions, detention hearings, and violation hearings. *See, e.g,* Docket Sheet.

As relevant to the defendant's current motions here, it appears that the defendant was arrested in Florida for violations of supervised release on June 25, 2025 [24CR138 Doc. 17] and detained [*id.* Doc. 20], and has remained in custody since that date. On August 29, 2025, in opposing the defendant's appeal of the magistrate's order detaining him, the government form the

4

Middle District of Florida outlined salient facts supporting detention, apparently including that the defendant on December 30, 2024 represented to a lender to finance and purchase a vehicle that he had $14,000 monthly income as CEO of "Cut Above Ventures" and had held that position of 18 years [*id.* Doc. 78 at 5 n.1], a position contradicted by his financial affidavit in support of representation by the Federal Defender [*id.* at 7]. The defendant had also refused to pay restitution while nonetheless purchasing two new vehicles without obtaining approval of the Middle District probation office, and refused to provide Probation in Florida with copies of his bank statements [*id.* a 6]. The defendant also had a relatively recent history in Florida of committing new state law felonies of forgery, uttering a forged public record and voter fraud, with the finding of a state court guilty verdict on December 5, 2023 [*id.* at 7].

As relevant to the defendant's present motions to vacate transfer order and for immediate release which cast aspersions on the relevant Probation Officer in Florida, the defendant has already unsuccessfully and repeatedly accused that Officer of fraud before the District Court in the Middle District of Florida. On August 26, 2025, the defendant alleged misconduct and fraud based on the allegations made by the Officer in support of the arrest warrant for violation of supervised release, also moving under Fed. R. Civ. P. 60(b) to vacate the arrest warrant and permit the defendant to withdraw his guilty pleas had had entered in the original criminal case in Connecticut [*Id.* Doc. 64 at 3]. The district court denied the defendant's motions, without requiring government response [*Id.* Doc. 82].

In August 26, 2025, the magistrate conducted a preliminary hearing regarding an added violation of supervised release for which the relevant Probation Officer appears to have been the sole witness, and the court found probable cause that the defendant had committed the violation. [*id.* Docs. 68, 75]. That testimony of the Probation Officer resulted on September 3, 2025, with

5

the defendant filing an allegation of fraud on the court, calling for an "immediate investigation into misconduct by United States Probation Officer *****, whose sworn testimony and affidavit appear to constitute a fraud on the court and perjury. . . " [*Id.* Doc. 86 at 1, 4]. The appeal of the magistrate's detention order was summarily denied by the district court [Doc. at 91], with the instruction that "[a]ny future 'appeals' filed by Defendant of the detention order may be summarily denied."

By September 10, 2025, the district court endorsed an order that:

> In light of the prolific and voluminous filing of motions, appeals and other documents by Defendant Robert Rivernider, the Government's obligation to respond to pending motions and appeals is suspended. Should a response be appropriate, the Court will direct the Government to file a response. The Court reminds the Defendant that the pendency of motions or other matters may provide reason to reschedule the final revocation hearing if the Court needs additional time to resolve any pending motions or matters. He therefore may want to carefully consider whether filing a motion, appeal, or documents is necessary or helpful to his case.

[5:24CR138 Doc. 93]. Ultimately, the final revocation hearing was held on December 12, 2025, with judgment entered on that date of three years imprisonment with no supervision to follow [*id.* Docs. 114 & 115]. As of December 12, 2025, the defendant has appealed that judgment [*id.* Doc. 119]. After all of this, the defendant filed the pending motions with the Court raising similar issues and alleging that the Probation Office has engaged in a fraud on this Court.

<u>Legal Background and Argument</u>

18 U.S.C. Section 3605 provides a straight-forward, practical and efficient approach for the court system to process cases where the defendant and probation office are in a location different from, and in this case, far from the district in which the case is originally brought. The statute in relevant part provides:

> A court, after imposing a sentence, may transfer jurisdiction over a probationer or person on supervised release to the district court for any other district to which the person is required to proceed as a condition of his probation or release, or is

> permitted to proceed, with the concurrence of such court. A later transfer may be made in the same manner. A court to which jurisdiction is transferred under this section is authorized to exercise all powers over the probationer or releasee that are permitted by this subchapter or subchapter B or D [enabling revocation of supervised release] of chapter 227.

*Id.* 26 Moore's Federal Practice – Criminal Procedure Section 632.1.07 (2-26) explains the contours of 18 U.S.C. Section 3605:

> The court with jurisdiction over a defendant's probation or supervised release can transfer jurisdiction to another district with the concurrence of the transferee court. This is often done to transfer supervision to the district of the defendant's residence, or because the defendant was charged or convicted of another offense in another district and the courts act o their own to consolidate supervision of the defendant in one district. The transfer of jurisdiction is not considered a modification of the terms or conditions of probation or supervised release as that phrase is used in Rule 32.1, so a defendant is not entitled to notice of the transfer or the opportunity to contest it.

*Id.* (citing *United States v. Evans*, 87 F.3d 1009, 1011 (8th Cir. 1996); *United States v. Ohler*, 22 F.3d 857, 858-59 (9th Cir. 1994). In *Ohler*, the Ninth Circuit explained that the defendant did not have a liberty interest in the location of his probation jurisdiction, deferring to the courts' collective discretion to transfer a defendant for purposes of probation/supervised release if the statutory conditions are met. *Id.*

In fact, based on the statutory language, and presumably for administrative efficiency and to avoid multiple district courts simultaneously litigating supervise release issues, the courts have routinely held that once a transfer is effectuated, the transferor court no longer has jurisdiction to exercise powers that may be exercised by the transferee court. *United States v. Caldwell*, 2025 WL 1638527 (D. Utah, June 9, 2025) (citing cases); *United States v. Wallace*, 2025 WL 1040979 (D. Kansas. April 8, 2025 (citing cases); *United States v. Rosa-Marte*, 757 F.Supp.3d 158, 159 (D. Mass. November 21, 2024). As the Ninth Circuit noted in *United States v. King*, "the transferee court steps into the shoes of the transferor court." *Id.* 608 F.3d 1122, 1126-27 (9th Cir. 2010).

The transferee court, here Florida, is vested with the jurisdiction to revoke a defendant's supervised release for violations committed before the transfer of jurisdiction. *King*, 608 F.3d at at 1126. To hold otherwise would be contrary to the statutory text and structure and would lead to "absurd results." *Id.*; *see also United States v. Bailey*, 257 Fed. Appx. 210, 212 (11th Cir. 2007) ("[B]ased on the plain language of 18 U.S.C. Section 3605, the [transferee] district court. . . had the power to revoke [defendant's] supervised release as to the case transferred. . ., regardless of whether the conduct underlying the revocation was pre-transfer or post-transfer. . ."); *United States v. Adams*, 723 F.3d 687, 689 (6th Cir. 2013) ("We adopt the approach used by the Fifth, Eighth, Ninth, and Eleventh Circuits in holding that 18 U.S.C. Section 3605 authorizes a transferee court to revoke a term of a defendant's supervised release for violations committed prior to the transfer of jurisdiction."); *United States v. White*, 2024 WL 4458422 *1 (W.D. Penn. Oct. 10, 2024) (transferee court had jurisdiction to revoke the defendant's supervised release, even though transfer occurred after the violations).

The defendant does not challenge that the statutory requirements were met with the case transfer to Florida initiated from Connecticut and formally accepted by the Middle District of Florida. Frankly, given that the defendant was living in Florida, it has always made much sense to have his supervision overseen there. Further, it is plain from the very active court docket in the Middle District regarding his case that the magistrate and district court judge have extensive familiarity with his case. *See Ohler*, 22 F.3d at 858-59 (rejecting the defendant's claim that he was entitled to be in the district with officials most familiar with the defendant's case). The defendant's complaint, instead, is with a Florida probation officer that he claims engaged in fraud by allegedly not disclosing that the officer intended to pursue supervised release violations that predated the transfer [10CR222 Doc. 869 at 3]. But blindly asserting that the probation officer in Florida or any

other court official engaged in fraud does not make it so, as the district court in Florida has plainly recognized by apparently crediting the probation officer's version of events despite the defendant's broad accusations. *See* procedural history above.

The defendant had no liberty interest in supervised release being pursued in Connecticut. *See Ohler, supra*. And it was entirely appropriate for violation matters to be pursued in Florida by the Florida Probation Office where Rivernider was living, even if ultimately one or more of the violations pre-dated the date of transfer. *See King, Bailey, White, supra*. Given that the matter was duly fully transferred to Florida by the end of 2024, it appears that this Court – the Connecticut court -- would lack jurisdiction to consider the merits of release violations brought after the original date of transfer, *see Caldwell, Wallace, Rosa-Marte, King, supra*. The defendant's obvious strategic reason for alleging a "fraud" on the courts now is to try to relitigate issues more than a year after the transfer took place and after he has be through multiple hearings in Florida, filed extensive pleadings, been found to have violated conditions, and then been sentenced. Nothing the defendant has presented warrants this forum-shopping, and, to the extent the defendant seeks to raise any issues regarding the legitimacy of the district court in Florida considering release violations that occurred at any point, that should be raised in Florida, as it likely already has been, based on the procedural history noted above. The defendant's Motion to Vacate the transfer order [10CR222 Doc. # 869] should be promptly denied.

Given that the defendant's motion for immediate release for lack of jurisdiction [10CR222 Doc. 868] is entirely premised on the defendant's success on his motion to vacate, the defendant's motion for release should also be immediately denied. This Court neither can, given the jurisdictional transfer, nor should, given the legal, factual and procedural history, impede whatever steps the transferee court believes appropriate given the record before it. The district

court in Florida and any related appellate court are fully vested with the authority to evaluate the defendant's present challenges and handle the matter transferred to it.

    Respectfully submitted,

    DAVID X. SULLIVAN
    UNITED STATES ATTORNEY

    */s/Christopher W. Schmeisser*

    CHRISTOPHER W. SCHMEISSER
    ASSISTANT U.S. ATTORNEY
    Federal Bar No. ct14806
    christopher.schmeisser@usdoj.gov
    157 Church Street, 25TH Floor
    New Haven, CT  06510
    Tel.: (203) 821-3700

CERTIFICATION OF SERVICE

    I hereby certify that on February 13, 2026, a copy of the foregoing was filed electronically, by facsimile and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    In particular, a copy of this motion has been mailed to:

Robert Henry Rivernider, Jr. (ID# 25041136)
Orange County Corrections Department
3723 Vision Blvd.
Orlando, FL 32839

                                */s/Christopher W. Schmeisser*
                                Christopher W. Schmeisser
                                Assistant United States Attorney